UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| -v- | : | O9 Cr. 270 (SJ) |
| CARLOS MESA CARRILLO | : | AFFIRMATION |
| Defendant. | : | |

------------------------------------------------------x

JOAQUIN PEREZ, an attorney duly admitted to practice before the Courts of the State of Florida, Massachusetts, Rhode Island and Washington D.C., and admitted Pro Hac Vice in the present case, affirms under penalty of perjury that the following statements are true:

1. I represent Carlos Mesa Carrillo ("Mesa") in the above-captioned proceeding.

2. This affirmation is submitted in support of Mesa's motions to order the government to remove Mesa from the Special Housing Unit at the Metropolitan Detention Center ("MCC") or, in the alternative, to alter his conditions of imprisonment to ensure that he is able to participate properly and effectively in the preparation of his defense, consistent with his rights under the Fifth and Sixth Amendments to the United States Constitution as well as applicable statutes and regulations.

3. On April 30, 2009, Defendant was arrested on the present charges. On May 28, 2009, Defendant arrived at the MCC where he has been continuously held in the Special Housing Unit (SHU)[1]. Currently, Mesa is being detained under circumstances that interfere with the undersigned's ability to have meaningful discussions and meetings with him. Mesa receives very limited telephone privileges – only fifteen minutes a month, with no additional allowance for calls to his attorney. He has requested permission to call the undersigned only to be ignored, and thus has been unable to have any authorized "legal" calls. Within the facility, he must be escorted by at least two guards before he enters or exits the attorney interview room. This latter policy means that each attorney visit involves a serious delay that substantially reduces the amount of time available for contact with Mesa, not to mention essentially consuming an entire day of counsel's time for each attempt to meet with him.

4. Equally seriously, the officials at MDC have totally failed to comply with BOP regulations regarding inmate complaints regarding detention in the SHU. Those regulations require that Mesa receive a written explanation of the detention determination, regular review of that

---

[1] Mesa is confined to a cell for at least twenty three hours a day. His cell is approximately thirteen by eight feet in size. A four to five inch thick concrete bed slab juts out from the wall opposite the door. On the remaining wall there is a toilet and a metal sink and shower. His cell is windowless and only has a small opaque opening to look at the outside. The electrically controlled door is solid steel, with a seven inch by twenty eight inch aperture and two wickets little door slots, one at ankle height and one at waist height, for shackling him whenever he was let out and for passing him meal trays.

determination and hearings. MDC has not complied with any of these requirements. The time limits for such actions have long since expired. Mesa has filed numerous "BP-8" complaints, all of which have gone unanswered. He has requested the "BP-9" form but, inexplicably, MDC has not provided one to him. Even were BOP to comply with Mesa's requests today, the delays inherent in the appeals process are such that I will not be able to work with Mesa in an effective and timely manner.

5.  In response to inquiries, the Assistant United States Attorney's Office has repeatedly claimed that the determination regarding the conditions of Mesa's confinement is the province of the Bureau of Prisons alone, whereas the Bureau of Prisons has indicated that it is a determination made in part pursuant to communications and suggestions from the United States Attorney's Office. Administrative detention includes long terms of isolation in a small cell, having little contact with other inmates, and even with other members of the staff facility.

6.  The main argument for placing an inmate in this form of long term isolation is that it provides discipline and prevents violence. When an inmate refuses to abide by rules, when they escape, deal drugs, attacks other inmates or corrections officers, the Warden must be able to contain and punish such behavior. Similarly, if the person has a well documented

history of violence against other humans, and in society such restrictions may be warranted.

7. Here the only excuse given is that as a former member of the Colombian National Police (CNP), his safety is likely to be endangered by other unspecified inmates. It is important to note that at the same institution there are several former law enforcement officers who are presently assigned to the general population. Even more significant, there are some well known admitted drug traffickers, murderers and terrorists, who are not isolated and are permitted to enjoy the society of other inmates.

Respectfully submitted,

*/s/ Joaquin Perez*
Joaquin Perez, Esq.
Counsel for Defendant
6780 Coral Way
Miami, Florida 33155
Tel: (305) 261-4000
Fax: (305) 662-4067
Fl. Bar No.: 335339

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically mailed on this 15th day of September, 2009 to Andrea Goldbarg , AUSA, United States Attorneys' Office, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, NY 11201-1820.

*/s/ Joaquin Perez*
Joaquin Perez, Esq.