UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,          :

    - v -                                     :          CASE NO. O9 Cr. 270 (JS)

CARLOS MESA CARRILLO,              :

               Defendant.          :

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTIONS**

**THE COURT SHOULD DIRECT THE GOVERNMENT TO REMOVE MESA FROM THE SPECIAL HOUSING UNIT OR, IN THE ALTERNATIVE, TO ALTER HIS CONDITIONS OF IMPRISONMENT TO ENSURE THAT HE IS ABLE TO PARTICIPATE PROPERLY AND EFFECTIVELY IN THE PREPARATION OF HIS DEFENSE**

For many of the same reasons discussed above, the government's actions in subjecting Mesa to the extreme conditions of imprisonment in the most restrictive level of the SHU at MDC deny him his constitutional rights to due process, effective representation of counsel and a speedy trial.

We submit that Mesa's placement in the SHU is unrelated to any valid consideration under the applicable regulations. Although the Assistant United States Attorney represented at the time that Mesa's condition is related to his prior employment as a member of the Colombian National Police,[1] no effort has been made to explain why other people similarly situated are not confined under such restrictive conditions. His continued incarceration in that unit has been and continues to be in violation of not only the regulations governing such detention, as codified in 28 C.F.R § 541.22, but of the Bail Reform Act as well. This is not a case where disciplinary measures are being taken because of prior bad conduct. Rather, Mesa is being penalized for some undetermined fear that he would be harmed by other inmates.

The regulations require that certain procedures be followed when an inmate is placed in the SHU. Within 24 hours of placement, Subsection (b) provides that the inmate is to receive a copy of the detention order stating the reasons for the decision. Thereafter, Subsection (c) sets out the continuing requirements:

> [T]he Segregation Review Official [SRO] will review the status of inmates housed in administrative detention. The SRO shall conduct a record review within three work days of the inmate's placement in administrative detention and shall hold a hearing and formally review the status of each inmate who spends seven continuous days in administrative detention, and thereafter shall review these cases on the record (in the inmate's absence) each week, and shall hold a hearing and review these cases formally at least every 30 days.

---

[1] There are at least four (4) other members of the Colombian National Police amongst the general population at the MCC.

As documented in the attached affirmation and affidavit, the Bureau of Prisons has failed to comply with its own rules. Mesa was not afforded the required procedures as set out above, has received no explanation for his detention in the SHU, and has not even been able to secure the correct forms from officials at MDC so that he can exercise his appellate rights. Thus, the government has essentially done nothing other than totally frustrate Mesa's efforts to understand and contest his current situation.

That officials at MDC seem to view the requirements of BOP regulations as more honored in their breach is detailed by numerous courts. Two recent decisions detailing these shortcomings in this District are *United States v. Basciano*, 369 F.Supp.2d 344 (E.D.N.Y. 2005) (Garaufis, J.) and *United States v. Khan*, 540 F.Supp.2d 344 (E.D.N.Y. 2007) (Irizarry, J.)

The Department of Justice would seemingly take a much stricter view of the procedural requirements that apply to an inmate who is dissatisfied with the prison's determination. Under the regulations, after informal resolution fails, an inmate is required to file a complaint with the warden. Thereafter, an appeal may be taken to the regional director of the Bureau of Prisons, and then to the Bureau's general counsel. 28 C.F.R. § 542.15. The process is not expeditious under the best of circumstances, but where, as here, the government impedes that process, the government is stopped from arguing that these procedures must be followed.[2]

---

[2] Mesa went on a nine (9) day hunger strike requesting a formal explanation as to why he was being held as a disciplinary case. Despite his efforts, no explanation was formally given by the Warden or any other prison officers.

The government will no doubt argue that consideration of this motion is foreclosed because Mesa has not exhausted his remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which requires that all of the above steps be taken. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). That subsection provides:

> No *action* shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

(Emphasis supplied.) Such a position would be misplaced.

First, by its terms, the exhaustion requirement only applies to "actions." Mesa has instituted no action, and thus the provision is inapplicable. The relief he seeks here derives not directly from his grievances *vis-a-vis* the Bureau of Prisons, but rather from his assertion of the previously identified constitutional rights that he has been denied, in the context of the present criminal proceeding. *Cf. Bell v. Wolfish,* 441 U.S. 520, 537 (1979) (in prisoner suits, the Due Process Clause prohibits only those actions that subject a a pre-trial detainee to "punishment.") Nothing in the Act or the jurisprudence interpreting it deprives this Court of its jurisdiction to insure that is afforded all of his constitutionally-protected rights insofar as they affect the case at bar.

Second, exhaustion is not required in any event where administrative appeals are either futile or inadequate to prevent irreparable harm to the defendant. *Howell v. Immigration and Naturalization Serv.*, 72 F.3d 288, 291 (2d Cir.1995). Similarly, a defendant need not exhaust administrative remedies where there has been a violation of

"an important constitutional or statutory right." *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 168-69 (D.C.Cir.1983).

In particular, interference with a defendant's ability to consult counsel effectively is a direct impairment of the right to counsel under the Sixth Amendment. The Supreme Court has recognized that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). The Second Circuit has also noted the particular importance of assuring access to counsel in the pretrial context. *Wolfish v. Levi,* 573 F.2d 118, 133 (2d Cir.1978), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520 (1979) ("[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense.")

In *Basciano, supra*, Judge Garaufis addressed the relevant considerations extensively, in a case in which a Bonnano crime family leader sought release from the SHU over government claims that extreme isolation in the SHU was the only way to prevent his "words" from escaping the facility. We offer a detailed review of the proceedings in that case as instructive of the considerations we urge this Court to undertake here.

In granting Basciano's release, the court noted that the defendant was "faced with the prospect of perpetual detention without access to judicial review under circumstances that raise a serious and urgent constitutional question while the BOP fiddles." *Id.* at 349. The court went on to make extensive findings regarding the effects of confinement in the

SHU. Recognizing that "the security restrictions in place in the SHU make it much more difficult for Basciano to have productive meetings with his counsel," Judge Garaufis concluded that "the urgency of Basciano's need to marshal his legal defense . . . require that the government reserve the 'nuclear option' of indefinite solitary confinement until it is clear that less restrictive options have failed to constrain Basciano."[3] *Id.*

While the court in *Basciano* predicated its order removing Basciano from the SHU on the absence of credible evidence by the government of any then-current conduct suggesting a basis for detention in the SHU, the case's subsequent history, in which the government presented such evidence, is also instructive of what is missing in the government's actions against Mesa. Thus, in *Basciano v. Lindsay*, 530 F.Supp.2d 435 (E.D.N.Y. 2008), the court approved the imposition of highly restrictive conditions based on actual evidence of dangerous conduct at MDC based on a legitimate governmental purpose: "[A] pretrial condition will not amount to punishment if it 'is reasonably related to a legitimate governmental objective,' but will if it is 'arbitrary or purposeless. . . .'" *Id.* at 445 (quoting *Bell v. Wolfish, supra* at 539).[4]

---

[3] Here, there are a number of less restrictive options available. For instance, the government can transfer Defendant to a state or county facility to diminish the likelihood that other inmates may try to harm him.

[4] The court's analysis followed the four-factor test set forth in *Turner v. Safley*, 482 U.S. 78, 87 (1987), to evaluate whether Basciano's conditions of confinement violated due process rights in the context of the impairment of defense preparation. The relevant criteria are found in *Turner* at 81: "(1) whether there is a 'valid, rational connection' between the regulation and the legitimate governmental interest used to justify it; (2) whether there are alternative means for the prisoner to exercise the right at issue; (3) the impact that the desired accommodation will have on guards, other inmates, and prison resources; and (4) the absence of 'ready alternatives.'" *Basciano v. Lindsay, supra* at 445.

Even after Basciano's conditions of confinement were justified, the magistrate judge remained sensitive to his right to counsel and carefully balanced that right against the government's objectives, modifying the conditions to preserve the defendant's rights under *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir.2001) ("unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the Sixth Amendment"). Thus, in *Basciano v. Martinez*, No. 07-cv-421, 2007 WL 2119908 (E.D.N.Y., May 20, 2007), the court repudiated deprivations of constitutional rights in the name of facile objectives:

> The BOP's vague and conclusory invocation of "numerous security concerns" if Basciano were allowed contact visits is not enough. (See Haas Aff. ¶ 17.) By this logic, any condition imposed on Unit 10 South, including entirely prohibiting attorney-client meetings as a means of preventing attorneys from relaying oral messages to criminal associates outside the prison, would be reasonably related to the government's interest in preventing inmate violence. Recently, the Supreme Court explained that "*Turner* requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective." *Beard v. Banks*,[548 U.S. 521, 535], 126 S.Ct. 2572, 2581, 165 L.Ed.2d 697 (2006). To support the imposition of a condition that significantly burdens Basciano's right to prepare a defense, the BOP must articulate a justification reasonably related to an actual threat to security or the orderly operating of the institution. The government has failed to do so.

*Id.* at *10.

Without even reaching the question of the futility of exhaustion here, it is clear that Mesa will suffer irreparable harm in terms of the effect on his speedy trial rights, as well as deprivation of his rights to due process and effective representation, if he is

7

denied the ability to prepare his defense properly and effectively. The delays attributable to the administrative process will be further compounded by the delays already occurring as a result of the government's failure to conclude its investigation of the "threat" allegation and related matters. Even fundamental decisions such as the waiver of a right under the Speedy Trial Act can be compromised by Defendant's altered state of mind, resulting from prolonged isolated confinement in the SHU.[5]

Further, Mesa is also being subjected to a violation of the Bail Reform Act. Pursuant to §3142(c)(1)(B) of that Act, in determining whether to release an arrestee, the Court is required to impose the least restrictive conditions necessary to assure the defendant's return to court. We submit that, by subjecting Mesa to the *most* restrictive conditions of detention while he is detained pre-trial, the Department of Justice has flaunted the intent of the Act.

Mesa's conditions of confinement are entitled to the same careful review as those at issue in the *Basciano* case. The government has intruded on Mesa's rights based on nothing more than unsubstantiated suspicions that he will be harmed by other inmates, and has failed to demonstrate a rational need for resorting to the "nuclear option" to which he has been subjected. We respectfully ask the Court to order Mesa's removal from the SHU unless and until the government presents credible evidence to support its

---

[5] "It is an awful thing, solitary", John McCain wrote of his five and a half years as a prisoner of war in Vietnam. "It crushes your spirit and weakens your resistance more effectively than any other form of mistreatment." *Annals of Human Rights,* See "Hellhole" by Atul Gawande (The New Yorker, March 30, 2009 at page 3).

action. At a bare minimum, the Court should order sufficient modifications in Mesa's detention so as to protect his constitutional rights.

## CONCLUSION

For the reasons discussed above, we respectfully request that the Court grant the relief sought in the motions detailed above.

Respectfully submitted,

*/s/ Joaquin Perez*
Joaquin Perez, Esq.
Counsel for Defendant
6780 Coral Way
Miami, Florida 33155
Tel: (305) 261-4000
Fax: (305) 662-4067
Fl. Bar No.: 335339

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically mailed on this 15th day of September, 2009 to Andrea Goldbarg, AUSA, United States Attorneys' Office, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, NY 11201-1820.

*/s/ Joaquin Perez*
Joaquin Perez, Esq.